IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| GRAYSON CONSULTING, INC., | ) | |
| | ) | No. 2:07-cv-02992-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES CATHCART, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALAN M. GRAYSON, *et al.*, | ) | |
| | ) | No. 2:07-cv-00593-DCN |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CHARLES CATHCART, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant Dmitry Buriak's[1] ("Buriak") second motion to dismiss, ECF No. 988, and his motion for summary judgment, ECF No. 990, in Grayson v. Cathcart, Docket No. 07-cv-00593 ("the '593 Case"). For the reasons stated below, the court grants the motion to dismiss and denies as moot the motion for summary judgment. Because the same analysis applies to the court's ability to exercise personal jurisdiction over Buriak in a related case, Grayson Consulting, Inc. v. Cathcart, Docket No. 07-cv-02992 ("the '2992 Case"), the court dismisses Buriak from that case as well.[2]

---

[1] Over the course of this litigation, the parties have spelled Buriak's name in a number of ways. In this order, the court adopts the spelling used by Buriak's counsel.

[2] While Buriak filed his motions to dismiss and for summary judgment in the '593 Case only, the plaintiffs filed a consolidated response to Buriak's motions – and to the motions of a

1

## I. BACKGROUND

Because the facts of this case are well known to all parties, the court dispenses with a recitation of them. Instead, the court provides a brief procedural background relating only to the motions addressed herein.

Plaintiffs Alan M. Grayson and the AMG Trust filed their third amended complaint in the '593 Case on February 4, 2013. That complaint asserts fifteen causes of action, eleven of which are asserted against Buriak, a citizen and resident of Russia:

- (i) Fraud (third cause of action);
- (ii) Aiding and abetting fraud (fourth cause of action);
- (iii) South Carolina Uniform Securities Act fraud (fifth cause of action);
- (iv) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (sixth cause of action);
- (v) Negligent misrepresentation (seventh cause of action)
- (vi) Aiding and abetting breach of fiduciary duty (tenth cause of action);
- (vii) Conversion (eleventh cause of action);
- (viii) Civil conspiracy (twelfth cause of action);
- (ix) Violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") (thirteenth cause of action);
- (x) Fraudulent conveyance (fourteenth cause of action); and
- (xi) Quantum meruit (fifteenth cause of action).

Plaintiff Grayson Consulting, Inc.'s complaint in the '2992 Case asserts seventeen causes of action, thirteen of which are asserted against Buriak:

- (i) § 542 turnover (first cause of action);

---

number of other defendants – in the '593 Case as well as the '2992 Case. The court believes that Buriak's failure to file his motions in the '2992 Case as well as the '593 Case was likely an oversight. As a result, and because the plaintiffs filed their response in both cases, the court construes Buriak's motion and reply as applicable to the '2992 case as well.

(ii)    § 544(b)/S.C. Code § 27-23-10 Actual Fraud/§§ 550-51 (second cause of action);

(iii)   § 544(b)/S.C. Code § 27-23-10 Constructive Fraud/§§ 550-51 (third cause of action);

(iv)    § 548 Actual Fraud/§§ 550-51 (fourth cause of action);

(v)     § 548 Constructive Fraud/§§ 550-51 (fifth cause of action);

(vi)    § 549 (seventh cause of action);

(vii)   Conversion (tenth cause of action);

(viii)  Quantum meruit (eleventh cause of action);

(ix)    Constructive trust (twelfth cause of action);

(x)     Accounting (thirteenth cause of action);

(xi)    Aiding and abetting breach of fiduciary duty (fourteenth cause of action);

(xii)   Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (fifteenth cause of action); and

(xiii)  Injunction (seventeenth cause of action).

Buriak filed both his motion to dismiss for lack of personal jurisdiction and his motion for summary judgment on April 15, 2013. After receiving extensions of time, Alan Grayson, the AMG Trust, and Grayson Consulting, Inc. (collectively, "Grayson") filed a consolidated response to Buriak's motions and several other dispositive motions on June 18, 2013. Grayson filed its consolidated response in both the '593 Case and in the '2992 Case. Buriak replied to Grayson's response on June 27, 2013.

## **II. DISCUSSION**

Buriak asserts that he must be dismissed from these cases because the court cannot properly exercise personal jurisdiction over him. Grayson counters that this court may exercise personal jurisdiction over Buriak on the basis of both South Carolina's

long-arm statute and Federal Rule of Civil Procedure 4(k)(2).

A plaintiff must base his claim for personal jurisdiction "on specific facts set forth in the record." Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F.Supp. 306, 310 (D.S.C. 1992) (Norton, J.). "When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). On a motion to dismiss, a court deciding a personal jurisdiction question must draw all reasonable inferences in favor of the plaintiff, but "the court need not credit conclusory allegations or draw far-fetched inferences." Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft KG v. Texport, Inc., --- F. Supp. 2d ---, 2013 WL 3155760, at *2 (D.S.C. 2013) (quoting Masselli & Lane, P.C. v. Miller & Schuh, P.A., 215 F.3d 1320, at *1 (4th Cir. May 30, 2000) (table)).

### A. Specific Jurisdiction Based on the South Carolina Long-Arm Statute

Personal jurisdiction over an out-of-state defendant may be either general or specific. In this case, Grayson appears to argue only that it may exercise specific jurisdiction over Buriak pursuant to South Carolina's long-arm statute. As a result, the court confines its discussion on this topic to specific jurisdiction. Buriak argues that he does not have sufficient minimum contacts with South Carolina for this court to exercise specific jurisdiction. Grayson responds that jurisdiction is proper because Buriak was intimately involved in the 90% Stock Loan Program.

"A court may exercise specific jurisdiction when 'the out-of-state defendant engage[s] in some activity purposely aimed toward the forum state and ... the cause of

action arise[s] directly from that activity.'" Sonoco, 877 F. Supp. 2d at 405 (quoting ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 331–32 (D.S.C. 1999)); see also S.C. Code Ann. § 36-2-803. Minimal, isolated, or unsolicited contacts, however, will not suffice. Id. A district court may exercise personal jurisdiction over a defendant if the applicable state long-arm statute confers jurisdiction and if the assertion of that jurisdiction is consistent with constitutional due process." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993). South Carolina's long-arm statute provides that:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's ... (c) commission of a tortious act in whole or in part in the State; [or] (d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State.

S.C.Code Ann. §§ 36-2-803(1)(c)-(d). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012).

For the purposes of personal jurisdiction, the due process clause is satisfied if a defendant has purposefully availed himself of the privilege of conducting business in the forum state by establishing sufficient minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Burger King v. Rudzewicz, 471 U.S. 462, 475–76 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant has sufficient minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being

5

haled into court there." Sonoco, 877 F. Supp. 2d at 405 (quoting World-Wide Volkswagen, 444 U.S. at 297).

> The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. . . . But, when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.

Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory, 283 F.3d 208, 214 (4th Cir. 2002) (internal quotations omitted). "The weaker the contacts, however, the less likely it is that jurisdiction is reasonable." In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334, 352 (D. Md. 2004).

The Fourth Circuit has

> synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which [courts] consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations omitted). "Failure to satisfy any of the three prongs is fatal to a court's ability to exercise specific jurisdiction." Sonoco, 877 F. Supp. 2d at 405.

In the business context, courts examining whether a defendant has engaged in purposeful availment under the first prong of the specific personal jurisdiction test have looked to the following factors:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;

6

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

- whether the performance of contractual duties was to occur within the forum.

Geometric, 561 F.3d at 278 (internal citations omitted).

The operative complaints in the '593 and '2992 Cases describe the many ways in which Buriak's co-defendant, Paul Jarvis, played an important role in the 90% Stock Loan Program. For example, the complaints allege that Jarvis, the former chief executive officer of the Cypriot company Vision International People Group, P.L. ("Vision"), frequently communicated with co-defendants based in South Carolina in order to transact business related to the Stock Loan Program. See, e.g., Pls.' Resp. Ex. 29; 39; 41; 50. Grayson alleges that Buriak, the chairman of Vision's board of directors, is implicated in this litigation through Jarvis's actions and the actions taken by Vision.[3] See, e.g., Pls.' Consolidated Response at 27, ECF No. 1038 ("In his role, Jarvis had virtually unfettered control of Vision, subject to Buriak's ultimate control of Vision."); id. at 28 ("[T]he only possible conclusion . . . is that Vision knew and consented to Jarvis' control of Total

---

[3] The parties appear to agree that Jarvis, in addition to his role as Vision's CEO, was the sole officer of Bancroft Ventures, Ltd. ("Bancroft"), an entity that acted as the "lender" for the loans that Derivium Capital, LLC made to Grayson. The parties also appear to agree that Jarvis directed Vision attorney Ismini Papacosta to provide legal services to Bancroft. Jarvis is also the founder of Total Eclipse, a company that provided a variety of corporate and administrative services to Bancroft. Total Eclipse also advertised for the 90% Stock Loan Program; its website stated for several years that "Total Eclipse International Ltd. plays an administrative role with our affiliate (Bancroft Ventures Limited), which offers a unique secured stock loan product." Pls.' Resp. Ex. 48.

Eclipse [and Bancroft], and thereby knew and consented to being under joint control with those entities . . . . [I]t is hardly a stretch that Vision itself became involved with the 90% Loan Program, first through Total Eclipse and then later under its own auspices.").

Grayson does not elaborate on the ways in which Buriak has reached out and directed his activities to South Carolina. When reviewing the factors set out by the Fourth Circuit in Geometric, Buriak's contacts with this state are less than minimal. Buriak maintains neither an office nor an agent in South Carolina, and owns no property here; has never visited South Carolina, and so has never travelled to South Carolina to transact business that is the subject of this litigation; has not deliberately engaged in business activities in the state, made in-person contact with a South Carolina resident for business purposes, or communicated with South Carolina residents about business being transacted; and has not signed any agreement that applies South Carolina law or creates contractual duties that arise in South Carolina.

Grayson has not shown that Buriak purposefully availed himself of the privilege of conducting business in South Carolina or that he has any meaningful connections to the state. As a result, Grayson has not carried its burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper over Buriak.[4] Cf. Debt Relief Network, Inc. v. Fewster, 367 F. Supp. 2d 827, 829-30 (D. Md. 2005) (declining to exercise personal jurisdiction over a foreign corporation on the basis that its agent resided

---

[4] Grayson briefly argues that "Vision's conduct may be imputed to Buriak as its principal, or Buriak may be found liable under respondeat superior as the employer of Jarvis who was acting within the scope of his employment," and that summary judgment in Buriak's favor is improper because "the issue of agency relationships are [sic] properly reserved for the jury." Pls.' Resp. 61-62. This argument is unavailing. While Grayson cites a number of cases for the proposition that a jury must decide any facts tending to prove the existence of an agency relationship, see, e.g., Gathers v. Harris Teeter Supermarket, Inc., 317 S.E. 2d 748, 752 (S.C. Ct. App. 1984), none of those cases suggest that an alleged agency relationship modifies the personal jurisdiction analysis that the court must undertake.

in the forum state when there was no evidence that the corporation had sufficient minimum contacts with the state).  Because Grayson has not demonstrated that Buriak purposefully availed himself of the privilege of conducting activities within South Carolina, the court need not consider the other two prongs of the specific personal jurisdiction test.  It is apparent that the court cannot exercise specific personal jurisdiction over Buriak pursuant to South Carolina's long-arm statute.

### B. Jurisdiction Under Fed. R. Civ. P. 4(k)(2) & Pendent Personal Jurisdiction

Buriak also argues that he is not subject to personal jurisdiction under the broader nationwide service provision found in the RICO statute.  He contends that:  (1) RICO does not provide for international service of process; (2) the court's exercise of personal jurisdiction over him would violate due process; and (3) Grayson has failed to make out a colorable RICO claim against him.  Grayson responds that Buriak is, indeed, subject to the court's exercise of personal jurisdiction under RICO.  Because the court has personal jurisdiction over Buriak with respect to the RICO claim, Grayson argues, the court should also exercise pendent personal jurisdiction over the other claims against Buriak because all of these claims share a common nucleus of operative fact.

Rule 4(k)(2) of the Federal Rules of Civil Procedure is, essentially, a federal long-arm statute.  Saudi v. Northrop Grumman Corp., 427 F.3d 271, 273 (4th Cir. 2005).  Rule 4(k)(2) states:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> **(A)** the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> **(B)** exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2)(A)-(B).  Three requirements must be met before a court can obtain personal jurisdiction over a foreign corporation pursuant to Rule 4(k)(2):  (1) the suit must arise under federal law; (2) the defendant must not be subject to personal jurisdiction in any state court; and (3) the defendant must have contacts with the United States consistent with the Constitution and laws of the United States.  Saudi, 427 F.3d at 275.  The third requirement is an inquiry into whether the exercise of personal jurisdiction over a defendant would comport with the due process clause.

The parties do not appear to dispute that the '593 and '2992 Cases arise, in part, under federal law.  Likewise, the parties appear to agree that Buriak is not subject to personal jurisdiction in any state court.  What remains to be considered is whether the exercise of personal jurisdiction under Rule 4(k)(2) would comport with due process.  As detailed above, the exercise of specific jurisdiction comports with due process if a defendant has established sufficient minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.  The exercise of general jurisdiction over a defendant requires a greater showing – that the defendant's contacts with the forum are of a continuous and systematic nature.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).  In the context of an assertion of personal jurisdiction pursuant to Rule 4(k)(2), the relevant forum is the United States as a whole, not an individual state.  "Federal Rule of Civil Procedure 4(k)(2) cannot be used to obtain personal jurisdiction over a foreign corporation where . . . the foreign corporation's contacts with the United States fail to establish any proper basis for specific or general jurisdiction."  Saudi, 427 F.3d at 273.

Grayson's assertion that personal jurisdiction is proper pursuant to RICO and

Rule 4(k)(2) fails for the same reasons that doomed its assertion of specific personal jurisdiction. That is, while Buriak admits that he has occasionally travelled to the United States, Def.'s Mot. to Dismiss 3, Grayson has not shown that Buriak should reasonably anticipate being haled into court in this country. Grayson has simply not demonstrated that Buriak's contacts with the United States are enough to warrant the exercise of personal jurisdiction over him.[5]

Grayson has not demonstrated that the exercise of personal jurisdiction over Buriak – whether pursuant to the South Carolina long-arm statute or Rule 4(k)(2) – would pass constitutional muster. As a result, the court grants Buriak's motion to dismiss, ECF No. 988.

### III. CONCLUSION

For the foregoing reasons, the court **GRANTS** Dmitry Buriak's motion to dismiss for lack of personal jurisdiction, Grayson v. Cathcart, Docket No. 07-cv-00593, ECF No. 988; and **DENIES AS MOOT** Buriak's motion for summary judgment, Grayson v. Cathcart, Docket No. 07-cv-00593, ECF No. 990. The court also **DISMISSES** Buriak as a defendant in Grayson Consulting, Inc. v. Cathcart, Docket No. 07-cv-02992.

---

[5] Even if the court could properly exercise personal jurisdiction over Buriak, Grayson's RICO allegations would likely be insufficient to maintain a RICO claim against Buriak. To state a colorable claim for relief under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). When using predicate acts such as wire fraud and mail fraud for a RICO claim, a plaintiff must meet the particularized pleading standard found in Rule 9(b) of the Federal Rules of Civil Procedure. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1137 (4th Cir. 1993).

In both the '593 Case and the '2992 Case, Grayson's RICO allegations do not mention Buriak by name, and do not include facts that implicate Buriak in the alleged conspiracy. See Third Am. Compl. ¶ 232-247. Nor do the RICO claims reference any communications originating from or being received by Buriak. In short, Grayson's RICO claims do not meet Rule 9(b)'s pleading requirements to the extent that they attempt to allege wrongdoing by Buriak.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 18, 2013**
**Charleston, South Carolina**