IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| GRAYSON CONSULTING, INC., | ) | |
| | ) | No. 2:07-cv-02992-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| EVELYN CATHCART, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALAN M. GRAYSON, *et al.*, | ) | |
| | ) | No. 2:07-cv-00593-DCN |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CHARLES CATHCART, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant Total Eclipse International, Limited's renewed motion to dismiss for lack of personal jurisdiction and its separate motion for summary judgment. These motions are filed as ECF Nos. 992 and 993 in Grayson v. Cathcart, Docket No. 07-cv-00593 ("the '593 Case"); they are also filed as ECF Nos. 617 and 618 in Grayson Consulting, Inc. v. Cathcart, Docket No. 07-cv-02992 ("the '2992 Case"). For the reasons stated below, the court denies both motions.

1

## I.  BACKGROUND

Because the facts of this case are well known to all parties, the court dispenses with a recitation of them.  Instead, the court provides a brief procedural background relating only to the motions addressed herein.

Plaintiffs Alan M. Grayson and the AMG Trust filed their third amended complaint in the '593 Case on February 4, 2013.  That complaint asserts fifteen causes of action, eleven of which are asserted against Total Eclipse International, Limited ("TEI"), a United Kingdom entity with its principal place of business in Cyprus:

(i)  Fraud (third cause of action);

(ii)  Aiding and abetting fraud (fourth cause of action);

(iii)  South Carolina Uniform Securities Act fraud (fifth cause of action);

(iv)  Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (sixth cause of action);

(v)  Negligent misrepresentation (seventh cause of action)

(vi)  Aiding and abetting breach of fiduciary duty (tenth cause of action);

(vii)  Conversion (eleventh cause of action);

(viii)  Civil conspiracy (twelfth cause of action);

(ix)  Violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") (thirteenth cause of action);

(x)  Fraudulent conveyance (fourteenth cause of action); and

(xi)  Quantum meruit (fifteenth cause of action).

Plaintiff Grayson Consulting, Inc.'s complaint in the '2992 Case asserts seventeen causes of action, eleven of which are asserted against TEI:

(i)  § 542 turnover (first cause of action);

    (ii)       § 544(b)/S.C. Code § 27-23-10 Actual Fraud/§§ 550-51 (second cause of action);

    (iii)      § 544(b)/S.C. Code § 27-23-10 Constructive Fraud/§§ 550-51 (third cause of action);

    (iv)      § 548 Actual Fraud/§§ 550-51 (fourth cause of action);

    (v)       § 548 Constructive Fraud/§§ 550-51 (fifth cause of action);

    (vi)      § 549 (seventh cause of action);

    (vii)     Conversion (tenth cause of action);

    (viii)    Quantum meruit (eleventh cause of action);

    (ix)      Constructive trust (twelfth cause of action);

    (x)       Accounting (thirteenth cause of action); and

    (xi)      Injunction (seventeenth cause of action).

TEI filed both its motion to dismiss for lack of personal jurisdiction and its motion for summary judgment on April 15, 2013. After receiving extensions of time, Alan Grayson, the AMG Trust, and Grayson Consulting, Inc. (collectively, "Grayson") filed a consolidated response to TEI's motions and several other dispositive motions on June 18, 2013. TEI replied to Grayson's response on June 25, 2013. The parties presented oral argument on these motions at a hearing held on July 1, 2013. These motions are, therefore, ripe for the court's review.

## II. STANDARDS

### A. TEI's Motion to Dismiss

A plaintiff must base his claim for personal jurisdiction "on specific facts set forth in the record." Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F. Supp. 306, 310 (D.S.C. 1992) (Norton, J.). "When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question

thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). While, on a motion to dismiss, a court deciding a personal jurisdiction question must draw all reasonable inferences in favor of the plaintiff, "the court need not credit conclusory allegations or draw far-fetched inferences." Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft KG v. Texport, Inc., --- F. Supp. 2d ---, 2013 WL 3155760, at *2 (D.S.C. 2013) (quoting Masselli & Lane, P.C. v. Miller & Schuh, P.A., 215 F.3d 1320, at *1 (4th Cir. May 30, 2000) (table)).

### B. TEI's Motion for Summary Judgment

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does

4

not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Anderson, 477 U.S. at 255.

### III.  DISCUSSION

The court considers TEI's motion to dismiss for lack of personal jurisdiction before turning to TEI's motion for summary judgment.

**A.  TEI's Motion to Dismiss**

In its motion to dismiss, TEI asserts that it is not subject to the court's exercise of personal jurisdiction.  Grayson counters that personal jurisdiction is proper on the basis of both South Carolina's long-arm statute and Federal Rule of Civil Procedure 4(k)(2).

Personal jurisdiction over an out-of-state defendant may be either general or specific.  In this case, Grayson appears to argue only that it may exercise specific jurisdiction over TEI pursuant to the state's long-arm statute.  See Pls.' Consolidated Resp. 51 ("This court may exercise in personam jurisdiction over these defendants based upon specific jurisdiction.")  As a result, the court confines its discussion on this topic to specific jurisdiction.  TEI argues that it does not have sufficient minimum contacts with South Carolina for this court to exercise specific jurisdiction.  Grayson responds that jurisdiction is proper because TEI was intimately involved in the 90% Stock Loan Program.

"A court may exercise specific jurisdiction when 'the out-of-state defendant engage[s] in some activity purposely aimed toward the forum state and ... the cause of action arise[s] directly from that activity.'" Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 405 (D.S.C. 2012) (quoting ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 331–32 (D.S.C. 1999)). Minimal, isolated or unsolicited contacts, however, will not suffice. Id. A district court sitting in diversity may exercise personal jurisdiction over a defendant if the applicable state long-arm statute confers jurisdiction and if the assertion of that jurisdiction is consistent with constitutional due process. Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir.1993). South Carolina's long-arm statute provides that:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's ... (c) commission of a tortious act in whole or in part in the State; [or] (d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State.

S.C.Code Ann. §§ 36-2-803(1)(c) & (d). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005); see also ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012).

With respect to personal jurisdiction purposes, the due process clause is satisfied if a defendant has purposefully availed himself of the privilege of conducting business in the forum state by establishing sufficient minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Burger King v. Rudzewicz, 471 U.S. 462, 475–76 (1985); World-Wide Volkswagen Corp. v.

6

Woodson, 444 U.S. 286, 292 (1980); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant has sufficient minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Sonoco, 877 F. Supp. 2d at 405 (quoting World-Wide Volkswagen, 444 U.S. at 297).

> The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. . . . But, when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.

Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory, 283 F.3d 208, 214 (4th Cir.2002) (internal quotations omitted). "The weaker the contacts, however, the less likely it is that jurisdiction is reasonable." In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334, 352 (D. Md. 2004).

The Fourth Circuit has

> synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which [courts] consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations omitted). "Failure to satisfy any of the three prongs is fatal to a court's ability to exercise specific jurisdiction." Sonoco, 877 F. Supp. 2d at 405.

### 1. Purposeful Availment

In the business context, courts examining whether a defendant has engaged in purposeful availment under the first prong of the specific personal jurisdiction test have

7

looked to the following factors:

- whether the defendant maintains offices or agents in the forum state;

- whether the defendant owns property in the forum state;

- whether the defendant reached into the forum state to solicit or initiate business;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

- whether the performance of contractual duties was to occur within the forum.

Geometric, 561 F.3d at 278 (internal citations omitted).  Stated differently, the Fourth Circuit has "found purposeful availment where a defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012).

The operative complaints and Grayson's consolidated response describe the many ways in which Paul Jarvis, TEI's former chairman, director, and controlling shareholder,[1] played an important role in the 90% Stock Loan Program.  For example, Grayson alleges

---

[1] TEI's financial statements for fiscal year 2000 list Jarvis as chairman of TEI and note that Jarvis controlled all TEI shares until October 23, 2000, the date on which R.D. Hoy was appointed as a director of TEI.  Pls.' Resp. Ex. 74 at 9.  As of October 23, 2000, Jarvis and Hoy each controlled "48.50% of the issued ordinary share capital in the company." Id.  By the close of fiscal year 2002, Jarvis was once again TEI's sole director and controlling party.  Pls.' Resp. Ex. 31 at 1, 12 ("The controlling party was P.A. Jarvis by virtue of his 97% ownership of the issued ordinary share capital in the company").

that Jarvis frequently communicated with co-defendants based in South Carolina in order to transact business related to the Stock Loan Program.  See, e.g., Pls.' Resp. Exs. 29, 39, 41, & 50.  In addition to his role at TEI, Jarvis was the sole officer of Bancroft Ventures, Ltd. ("Bancroft"), an entity that acted as the "lender" for the loans that Derivium Capital, LLC made to Grayson.  The parties agree that TEI provided consultancy services for Bancroft Ventures (UK), Ltd. ("Bancroft UK"), a wholly-owned subsidiary of Bancroft.  TEI Mot. to Dismiss Ex. 5 at 19 (showing that Bancroft UK paid £ 51,659.00 to TEI in 2002 for consultancy services and other fees).  Even counsel for TEI explained at the July 1, 2013 hearing that an invoice issued to Bancroft for roughly $12,000 for consultancy services, Pls.' Resp. Ex. 76, memorializes the transfer of money from Bancroft to TEI for services that Jarvis provided.  Indeed, notes from a June 18, 2003 Bancroft meeting reference the services rendered by TEI.  Pls.' Resp. Ex. 16 at 1 ("Accounts are being prepared by Total Eclipse.").

  While TEI maintains neither an office nor an agent in South Carolina and owns no property in the state, TEI has extensively communicated with at least one South Carolina resident regarding business transactions that are implicated in this litigation.[2]  In keeping with TEI's acknowledged role as the preparer of Bancroft's accounts, Jarvis – from his TEI email address – frequently corresponded with Robert Nagy, a South Carolina-based accountant who worked for Derivium.  See, e.g., Pls.' Resp. Ex. 28 (email from Jarvis'

---

[2] The court distinguishes between these communications, which implicate TEI, and the communications sent by Jarvis and Ismini Papacosta from their Vision International People Group, P.L. email accounts and fax machines.  The distinction lies in the content of these communications, which demonstrate that Jarvis was acting on behalf of TEI, and in other evidence that supports the same conclusion.  The evidence clearly shows that TEI provided services to Bancroft and, ultimately, to the 90% Stock Loan Program. The emails that Jarvis sent from his TEI email account to Scott Cathcart and Robert Nagy, for example, discuss the services that TEI provided to Bancroft.

TEI email account to Nagy that references a previous conversation and raises several issues regarding Bancroft accounts); id. Ex. 29 (email from Nagy to Jarvis's TEI email account regarding the preparation of Bancroft's financial statements); id. Ex. 39 (email from Nagy to Jarvis's TEI email account regarding Bancroft balance sheets and noting a planned meeting between Jarvis and Nagy in Charleston, South Carolina). Jarvis also communicated directly with Derivium executives. See Pls.' Resp. Ex. 19 (introductory email from Jarvis's TEI email account to Scott Cathcart providing the TEI email address as the best contact); id. Ex. 59 (email from Jarvis's TEI email account to Scott Cathcart regarding the "development of Derivium in Europe"). Jarvis, who controlled both TEI and Bancroft, apparently travelled to South Carolina to meet with Nagy regarding Bancroft's financial statements, a portion of Bancroft's business that TEI handled through its consultancy work.

In short, TEI worked closely with Bancroft to conduct business in South Carolina. Grayson has sufficiently proven that TEI purposefully availed itself of the privilege of conducting business in South Carolina and that TEI has meaningful connections to the state. As a result, Grayson has carried its burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper over TEI.

### 2. Activities directed at the state

Once a court has established a defendant's purposeful availment, the Fourth Circuit "require[s] that the plaintiff's claims arise out of activities directed at the forum state. The analysis here is generally not complicated. Where activity in the forum state is 'the genesis of [the] dispute,' this prong is easily satisfied." Shandong Linglong, 682 F.3d at 303 (quoting CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285,

295 (4th Cir. 2009)). "A plaintiff's claims similarly arise out of activities directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." Id.

As discussed above, Paul Jarvis, in his role as leader of TEI, substantially corresponded with and collaborated with Robert Nagy, a South Carolina resident, and other participants in the 90% Stock Loan Program. The evidence described above is sufficient to establish that TEI directed its activities at South Carolina, the forum state.

### 3. Reasonableness

Constitutional reasonableness, the third prong of the specific personal jurisdiction test, "protects a party from 'litigation so gravely difficult and inconvenient that [the] party unfairly is at a severe disadvantage in comparison to [its] opponent." Zurich Ins., 685 F.3d at 392 (quoting Burger King, 471 U.S. at 478). A defendant wishing to defeat specific personal jurisdiction on the basis that it is constitutionally unreasonable must demonstrate, "despite the presence of minimum contacts, 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. When considering whether the exercise of specific personal jurisdiction is constitutionally reasonable, "[t]he burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief guide [the court's] inquiry." Shandong Linglong, 682 F.3d at 303.

TEI's ability to secure counsel in South Carolina and its choice to do business with Charles Cathcart's 90% Stock Loan Program indicate that defending this lawsuit would not be particularly burdensome to TEI, or, at least, no more burdensome than it would be to any other corporate entity defending a lawsuit in this state. See CFA Inst.,

551 F.3d at 296; see also Shandong Linglong, 682 F.3d at 303 ("A corporate defendant's domicile abroad, standing alone, does not render domestic exercise of jurisdiction unduly burdensome."). South Carolina maintains a substantial interest in the resolution of Grayson's claims because much of the 90% Stock Loan Program's business occurred in South Carolina or was transacted by South Carolina residents, and because South Carolina law applies to a number of Grayson's claims. See CFA Inst., 551 F.3d at 296; Shandong Linglong, 682 F.3d at 304-05. Finally, Grayson has a significant interest in attempting to recover the millions of dollars that he allegedly lost through the 90% Stock Loan Program, an investment scheme that was based in Charleston.

For all these reasons, the court finds that it may exercise specific personal jurisdiction over TEI. Because the court has determined that it may exercise specific personal jurisdiction over TEI, it need not consider Grayson's argument that personal jurisdiction is proper pursuant to Rule 4(k)(2).

### B. TEI's Motion for Summary Judgment

TEI next seeks summary judgment on all counts of the '593 complaint and on all substantive counts of the '2992 complaint.

Among other claims, Grayson has alleged that TEI participated in an unlawful civil conspiracy and a RICO enterprise. "The elements of a civil conspiracy in South Carolina are (1) the combination of two or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special damages." Pye v. Estate of Fox, 633 S.E.2d 505, 511 (S.C. 2006). "Conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators and other circumstances." Island Car Wash, Inc. v. Norris, 358 S.E.2d 150, 153 (S.C. Ct. App.

1987). A plaintiff seeking civil damages under RICO must prove four elements: "(1) conduct [causing injury to business or property], (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1995).

Drawing all inferences in the light most favorable to Grayson, the court finds that there are genuine issues of material fact as to whether TEI participated in either a conspiracy or a RICO enterprise. It is an open question whether the accounts services that TEI rendered to Bancroft amount to participation in the 90% Stock Loan Program, and whether such participation would amount to a common law or RICO conspiracy. As a result, summary judgment on these claims would be inappropriate.

Because the court denies summary judgment on Grayson's civil conspiracy and RICO claims, it must also deny summary judgment on all remaining claims. If, at trial, Grayson were to prove that TEI participated in a civil conspiracy or in a RICO enterprise, then TEI could be found liable on other claims based upon the actions of its co-conspirators.[3]

### III. CONCLUSION

For the foregoing reasons, the court **DENIES** TEI's motion to dismiss for lack of personal jurisdiction, Grayson v. Cathcart, Docket No. 07-cv-00593, ECF No. 992 and Grayson Consulting, Inc. v. Cathcart, Docket No. 07-cv-02992, ECF No. 617. The court also **DENIES** TEI's motion for summary judgment, Grayson v. Cathcart, Docket No. 07-

---

[3] The court notes that TEI will be able to reassert its arguments supporting judgment in its favor at trial, after Grayson has presented its case. If Grayson cannot prove its conspiracy or RICO claims, many of the claims against TEI may fall away, as plaintiffs have, to date, failed to show that they had any dealings with TEI.

cv-00593, ECF No. 993, and <u>Grayson Consulting, Inc. v. Cathcart</u>, Docket No. 07-cv-02992, ECF No. 618.

  **AND IT IS SO ORDERED**.

                       _/s/ David C. Norton_

                        **DAVID C. NORTON**
                        **UNITED STATES DISTRICT JUDGE**

**December 10, 2013**
**Charleston, South Carolina**